UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **SANDRA MARIJAN,** **Plaintiff,** v. **THE UNIVERSITY OF CHICAGO, et al.** **Defendants.** | ) | **No. 17-CV-9361** **Magistrate Judge Michael Mason** |

**MEMORANDUM OPINION AND ORDER**

Michael T. Mason, United States Magistrate Judge:

Plaintiff Sandra Marijan brings this action pursuant to 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, and Illinois common law, against defendants the University of Chicago ("the University") and UChicago Argonne, LLC ("Argonne") (collectively, "defendants"). In her complaint (Dkt. 1), plaintiff alleges procedural and substantive due process violations, retaliation and wrongful termination after she was terminated from her employment at the University. Defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, defendants' motion to dismiss (Dkt. 18) is granted.

## I. Background[1]

Plaintiff Sandra Marijan began working for the University in various departments and positions approximately 14 years ago. (Compl. ¶ 4.) The University is a non-profit corporation, with over 14,000 students and over 15,000 employees. (*Id.* ¶ 8.)

[1] The following facts are taken from plaintiff's complaint (Dkt. 1) and are accepted as true for purposes of the motion to dismiss. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Defendant Argonne operates Argonne National Laboratory, which is a Department of Energy National Laboratory located in Lemont, Illinois. (*Id.* ¶ 10.)

In July of 2016, plaintiff began working for the University's Institute of Molecular Engineering (the "Institute") as an executive assistant. (*Id.* ¶ 6.) In that role, her duties included managing daily operations for professors and graduate students, as well as handling financial matters, grants, special events, conferences, workshops and other support services. (*Id.* ¶ 11.) The Institute employs "renowned faculty, each with a dual appointment to Argonne National Laboratory," and it is known for "its state of the art facilities and researchers." (*Id.* ¶ 7.)

In 2016, Professor Giulia Galli (a member of the Institute faculty) directed plaintiff to assist with the planning of a MICCOM Scientific Board Meeting to be held at Argonne National Laboratory. (*Id.* ¶ 12.) Professor Galli instructed plaintiff to organize and secure hotel accommodations for meeting attendees, organize a reception, organize dinners, reimburse board members for travel expenses, book transportation and other related tasks. (*Id.* ¶ 13.) In July, 2017, Professor Galli planned another MICCOM workshop to be held at the University for about 60 people. (*Id.* ¶ 14.) Plaintiff's duties for that workshop involved event planning and financial matters, including invoicing all expenses to Argonne for the workshop. (*Id.* ¶15.) At a May 18, 2017 meeting, plaintiff was directed to charge all expenses to a particular account at the Institute and not to charge any expenses to Professor Galli's federal grants. (*Id.* ¶ 16.) Plaintiff was also required to provide Argonne with an estimate of the expenses for the MICCOM workshop, and was expected to get management approval for any invoices before sending them out or seeking reimbursement. (*Id.* ¶ 17-18). Issues arose with the

reimbursements due to the fluctuating number of participants at the workshop, and additional expenses were also incurred. (*Id.*¶ 19.) Professor Galli did not want the additional expenses to come out of her grant funds or the Institute research account so she instructed plaintiff to invoice Argonne for the additional charges. (*Id.* ¶ 21.) After plaintiff's supervisors conferred with Argonne, plaintiff submitted the invoice to Argonne for payment. (*Id.* ¶ 22).

On July 27, 2017, a "senior manager" and "the Director of Finance & Operations" stopped payment of the invoice for the additional expenses and questioned plaintiff's handling of the invoicing. (*Id.* ¶ 23.) On August 3, 2017, an HR representative from the Institute, Valerie Mercer, told plaintiff that management would "escalate the situation" if she did not quit and that she should take the rest of the day off. (*Id.* ¶ 24.) Plaintiff returned the following day to find that she did not have building access. (*Id.* ¶ 25.) After speaking to a Facilities Director, plaintiff's access was reinstated. (*Id.*)

Plaintiff claims that after the MICCOM workshop, she was "subjected to increased scrutiny and intimidation," that her workload increased causing her undue stress and pressure, and that the work environment became "hostile with snide remarks and verbal abuse directed at plaintiff." (*Id.* ¶ 26.) Plaintiff handled another MICCOM workshop in September of 2017 without incident. (*Id.* ¶ 28.) On September 29, 2017, a new Chief of Staff at the Institute, along with Ms. Mercer, the HR representative, met with plaintiff. (*Id.* ¶ 29.) At this meeting, Ms. Mercer gave plaintiff her termination letter. (*Id.*) Plaintiff alleges that she was not subject to any discipline prior to her discharge. (*Id.* ¶ 30.) She also alleges that management from the University colluded and conspired with Argonne to terminate her employment.

In her complaint, plaintiff states that she was terminated based upon her invoicing for the MICCOM workshop, which she had been directed to do. (*Id.* ¶ 34.) She also alleges that she was terminated because she had previously complained about sexual harassment. (*Id.*) She claims that defendants did not apply "step discipline and instead fast track[ed] the termination." (*Id.* ¶ 35.) She claims she was "not afforded progressive discipline, as set forth within the University of Chicago employee handbook," and that progressive discipline "was provided to other executive assistants and employees who were engaged in similar activity." (*Id.* ¶ 37.) She claims that "despite management having the final authorization and ability to correct any errors the plaintiff may have made [for the invoicing], no one from management was investigated or disciplined." (*Id.* ¶ 38.)

With respect to her prior sexual harassment allegation, plaintiff alleges that she had "a target on her back" ever since she filed a complaint with her superiors in January of 2016. (*Id.* ¶ 49.) She claims the University ordered a structural reorganization after she complained about the harassment, which resulted in the loss of her position and severe emotional distress. (*Id.* ¶ 50.) She was then placed in a new position within the University at the Institute, but harassment continued there, including "changes to her terms and conditions of her employment, assigning [her] more work.., and subjecting her to punishment for matters approved by her supervisors or information never disclosed to her." (*Id.* ¶ 51.) She claims that "defendants' wrongful acts were intentional, willful and wanton and in reckless indifference to plaintiff's rights." (*Id.* ¶ 52.)

On December 29, 2017, plaintiff filed this lawsuit against defendants, alleging procedural and substantive due process violations under 42 U.S.C. § 1983, retaliation in

violation of Title VII of the Civil Rights Act, and wrongful termination under Illinois law. She claims that as a result of defendants' actions, she has been "forced to litigate for her severance pay, lost wages, lost benefits and humiliation, sever[e] emotional distress, medical expenses, and damages to her reputation." (*Id.* ¶ 39.)

Defendants now seek to dismiss plaintiff's claims under Rule 12(b)(6), arguing that (1) plaintiff improperly brought claims under Section 1983 against private entities; (2) her retaliation claims fail because of the lengthy time gap between the sexual harassment complaint and her termination; (3) Argonne is not a proper defendant because it was never plaintiff's employer; and (4) plaintiff's wrongful termination claim is preempted by the Illinois Human Rights Act and fails because it lacks the requisite public policy allegations. Each issue is addressed in turn below.

## II. Standard on a Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, it must contain enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). When ruling on a 12(b)(6) motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged and

drawing all possible inferences in the plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

## III. Analysis

### A. Section 1983 Claims

Defendants first argue that plaintiff's Section 1983 claims fail because defendants are private entities. To state a claim under Section 1983, a plaintiff must establish that he or she was deprived of a constitutional right or a right secured by federal law, and that the alleged deprivation was committed under color of state law. *Collins v. Northwestern Univ.*, 164 F. Supp. 3d 1071, 1076 (N.D. Ill. 2016). Defendants assert that because they are private entities, they were not acting under color of state law, and therefore, the second element for a Section 1983 claim cannot be satisfied here. In response, plaintiff argues that her claims are sufficient because she has alleged that defendants are state actors by virtue of their "joint action, symbiotic relationship and entwinement" with the Department of Energy.

"When a plaintiff brings a Section 1983 claim against a defendant who is not a government official or employee, the plaintiff must show that the private entity acted under the color of state law." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822-23 (7th Cir. 2009). "This requirement is an important statutory element because it sets the line of demarcation between those matters that are properly federal and those matters that must be left to the remedies of state tort law." *Id.* at 822–23. The test for whether a person acted under color of state law requires that "a court find such a close nexus between the State and the challenged action that the challenged action may be fairly treated as that of the State itself." *Rodriguez,* 577 F.3d at 823 (*citing Jackson v.*

*Metro Edison Co.*, 419 U.S. 345, 351 (1974)). In other words, "the ultimate issue in determining whether a person is subject to suit under Section 1983" is whether the conduct is "fairly attributable to the State or the party has acted in concert with State actors." *Id.* at 823 (*citing Rendell-Backer v. Kohn*, 457 U.S. 830, 838 (1982)).

Courts in this Circuit have recognized two circumstances in which a defendant that is a private entity may be found to have acted under color of state law. The first is when the state has cloaked the defendant in some degree of authority, which is usually through employment or other agency relationship. *See Yang v. Hardin*, 37 F.3d 282, 284 (7th Cir. 1994) (finding that Chicago police officers were acting under color of state law when "[t]hey were on duty, wearing Chicago police uniforms, driving a marked squad car and were investigating a crime"); *Pickrel v. City of Springfield, IL,* 45 F.3d 1115, 1118 (7th Cir. 1995) (finding an off-duty Springfield police officer could have been acting under color of state law because he was wearing his police uniform and displaying a badge); *Honker v. Smith*, 256 F.3d 477, 484–85 (7th Cir. 2001) ("[Acts [of defendants] are not made under color of state law unless they are related in some way to the performance of the duties of the state office") (quotations omitted). Often in this scenario, "private actors may become state actors [because] the state delegates a public function to a private entity or ... the state effectively controls the actions of the private party such that the state can be held responsible for the private party's decision." *Collins v. Northwestern Univ.*, 164 F. Supp. 3d 1071, 1076 (7th Cir. 2016).

"The second circumstance in which we have recognized that defendants may be found to act under color of state law is when the defendants have conspired or acted in concert with state officials to deprive a person of his civil rights." *Case v. Milewski*, 327

F.3d 564, 567 (7th Cir. 2003) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). "In order to establish a conspiracy, the plaintiff must demonstrate that the state officials and the private party somehow reached an understanding to deny the plaintiff [his or her] constitutional rights." *Id.* "To state a claim against a private entity on a Section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992); *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (same).

Plaintiff has alleged that defendant Argonne operates Argonne National Laboratory, a Department of Energy National Laboratory, under a federal government contract. She argues that these allegations allow "a plausible inference that Argonne is a state actor in light of the fact that Argonne National Laboratory is controlled by, is delegated public functions by, and [the] government is entwined in its management and control through the Department of Energy." (Resp. at 5.) Plaintiff also argues that the University and Argonne's management and control are so interrelated that they are also "entwined" for the purpose of establishing state action.

We find that plaintiff has not established that defendants are state actors under Section 1983. First, we agree with defendants that plaintiff's response brief overstates the allegations in her complaint. There are no allegations regarding entwinement or control by a state agency, or that governmental functions have been delegated by a government agency to defendants. The only allegation regarding a government body in the complaint is a single paragraph that provides that Argonne operates Argonne

National Laboratory, which is a DOE National Laboratory[2] under a contract. (Compl. ¶ 10.) Without allegations establishing a relationship between the two and a joint conspiracy or the control the government entity has over defendants, Section 1983 does not apply to the actions of the private entities here. *Rodriguez*, 577 F.3d at 822–23. Indeed, even government funding of a private entity does not turn that private entity into a state actor for purposes of Section 1983. *Turner v. Jackson Park Hosp.*, 264 F. Appx 527, 530 (7th Cir. 2008) ("the receipt of federal funds alone is not sufficient to establish state action"). Moreover, even if the allegations were sufficient to establish control of entwinement between the Department of Energy and defendants, the Department of Energy is a federal agency, not a state agency. *Lee v. Village of Glen Ellyn,* 16-CV-7170, 2017 WL 2080422, at *2 (N.D. Ill. May 15, 2017) (dismissing Section 1983 claims against federal law enforcement officers because they were federal, not state, actors). As a result, we find that plaintiff's allegations are insufficient to establish that defendants were acting under color of state law.

Because defendants here are not state actors, the motion to dismiss is granted as to Counts I and II of plaintiff's complaint. The Court grants plaintiff's request for leave to amend her claims. Plaintiff's amended complaint is due on August 8, 2018.

**B. Retaliation Claim**

**1. 19-Month Gap Between Her Complaint and Her Termination**

As part of her retaliation claim, plaintiff asserts that her termination was, in part, based on a sexual harassment complaint she made in January of 2016. Defendants argue that the length of time between the 2016 harassment complaint and her

---

[2]The plaintiff did not define "DOE" in her complaint, but the Court concludes that this an acronym for the Department of Energy.

termination on September 29, 2017 is too long to support her retaliation claim. To make out a prima facie case for retaliation, a plaintiff must allege that she engaged in protected activity, that she suffered an adverse employment action, and that there is a causal link between the two. *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016). Defendants assert that there is no reasonable inference of causation here because of the lengthy time gap between the protected activity and the adverse employment action.

"[R]etaliation claims under Title VII require traditional but-for causation, not a lesser 'motivating factor' standard of causation." *Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 508 (7th Cir. 2014) (internal citations omitted). Where there is a time gap between the two events, courts have held that, even at the pleading stage, "a retaliation claim can indeed be so bare-bones that a lengthy time period between the protected activity and the alleged retaliation will make any causal connection between the two implausible." *Brownlee v. Catholic Charities of the Archdiocese of Chicago*, No. 16 CV 00665, 2017 WL 770997, at *7 (N.D. Ill. Feb. 28, 2017) (holding there was no causal link when there were thirty months between harassment complaint and termination). In other words, for a retaliation claim that infers causation based on timing, as here, the adverse employment action must follow "close on the heels of protected expression" - typically, only a few days later. *Ghiles v. City of Chicago Heights*, No. 12 CV 07634, 2016 WL 561897, at *2 (N.D. Ill. Feb. 12, 2016) (holding that an unexplained six month delay between the protected activity and the retaliation was "too remote" to link the two events and establish causation).

Here, plaintiff filed her sexual harassment complaint in January of 2016 and her employment was terminated in September of 2017. Defendants argue that the complaint is devoid of facts explaining how an inference of retaliation can be drawn in spite of this 19-month gap, especially because plaintiff does not allege that the individuals who terminated her employment knew about her prior complaint. Defendants assert that plaintiff only alleges that "upon information and belief" she was terminated because of her harassment complaint.

We agree with defendants and find that because of the lengthy time gap, the element of causation is missing from plaintiff's prima facie case for retaliation. Under the case law set out above, the 19-month gap is far too long to allow us to infer causation. And her complaint does not allege a pattern of ongoing retaliation that would rectify this. *See, e.g, Brownlee,* 2017 WL 770997, at *7 (granting motion to dismiss retaliation claim because the complaint gave no indication that ongoing retaliation occurred during the lengthy time gap between plaintiff's harassment complaint and defendant's retaliatory conduct). In her complaint, plaintiff describes the details regarding the period in 2016 and 2017 leading up to her termination when she was working for the Institute and planning the conferences. The complaint then jumps backwards and states a few conclusory allegations that her termination was linked to the sexual harassment claim she made 19 months prior. (Compl. ¶¶ 48-50). The complaint does not include any facts explaining how we can infer that this was retaliation in spite of this 19-month gap. Aside from the incident with the invoicing in July of 2017, she has not alleged on-going retaliation, except to vaguely state that she had a "target on her back" since the sexual harassment claim. (Compl. ¶ 49.) Although

she does allege that there was a structural reorganization in her former department, there is no allegation that this was done in response to her complaint. Moreover, there is no evidence that management at the Institute, who was responsible for her termination, even had any knowledge of the sexual harassment complaint she made in a separate department. The University has 15,000 employees and plaintiff worked in several different departments over the 14 years she was employed. (Compl. ¶¶ 5, 8.) Without some facts to support her conclusion that her termination was a response to her sexual harassment complaint, her retaliation claim fails. *See Lugo v. Int'l Brotherhood of Elec. Workers,* 175 F. Supp. 3d 1026, 1038-39 (N.D. Ill. 2016) (retaliation claim dismissed where there was no evidence that defendants even knew of plaintiff's prior complaint); *compare Carlson v. CSX Transp.*, 758 F.3d 819, 828-29 (7th Cir. 2014) (retaliation claim was sufficiently pled where plaintiff alleged that attempts to advance at the company were thwarted and she "described an ongoing campaign" of retaliation).

Plaintiff argues that she has alleged on-going retaliation because of the restructuring in her former department and her move to a new position in the Institute. However, as we already noted, there is no allegation that the restructuring was in response to her complaint. Even assuming her transfer to the new position was in response to the sexual harassment complaint, her complaint here still lacks the necessary causal link because the restructuring occurred six months after the complaint. As we have already explained, the courts in this Circuit have held on numerous occasions that the alleged retaliation must be "on the heels of" the protected activity. *See, e.g., Ghiles,* 2016 WL 567897, at *2 ("for a retaliation claim inferring causation based on timing,... the adverse employment action must follow 'close on the

heels of protected expression' - typically only a few days later") (citing *Kidwell v. Eisenhauer,* 679 F.3d 957, 964 (7th Cir. 2012)); *Carlson*, 758 F.3d at 828-29 ("[i]f the best a plaintiff can do is allege that he engaged in protected activity and then, years later, the employer took an adverse action against him, the claim may not be permitted to proceed"). As a result, these allegations do not save plaintiff's retaliation claim.

In addition, plaintiff claims that reassignment to the Institute and other changes to the terms of her employment amounted to "on going retaliation," but this also is not sufficient because it does not constitute "adverse employment action" for purposes of a retaliation claim. In order to state a prima facie case, a plaintiff must allege that her employer took some type of "adverse employment action." *Lord* , 839 F.3d at 563. Plaintiff has alleged a department reorganization and a new position. We construe this as akin to a lateral transfer, which will not support a retaliation claim. *See Martinez v. Northwestern Univ.*, 173 F. Supp. 3d 777, 788 (7th Cir. 2016) ("by and large, a reassignment that does not affect pay or promotion opportunities lacks the potential to dissuade a reasonable employee from making or supporting a charge of discrimination"); *Princeton v. Lowes Home Ctrs.*, No. 09 CV 1942, 2009 WL 3824610, at *4 (N.D. Ill. Nov. 6, 2009) ("a transfer without any decrease in hours or pay or significant diminution in material duties" is not an adverse employment action and "is legally insufficient to support a retaliation claim"). As a result, plaintiff's retaliation claim is not sufficient and defendants' motion to dismiss is granted on this count as well.

**2. Plaintiff Did Not Name Argonne In Her EEOC Charge**

Next, defendants argue that the claims against Argonne must fail because Argonne was not named in plaintiff's EEOC complaint. "Ordinarily, a party not named

as a respondent in an EEOC charge may not be sued under Title VII." *Tamayo* , 526 F.3d at 1089. The purpose of this requirement is "to give the employer some warning of the conduct about which the employee is aggrieved and afford the EEOC and the employer the opportunity to attempt conciliation without resort of the courts." *Id.* An exception to the rule exists when "an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings." *Id.*

Here, plaintiff only named the University as the respondent in the EEOC filings. Therefore, under the general rule, she would not be permitted to bring this claim against Argonne. However, she asserts that the exception to the rule applies here because the faculty at the Institute had a dual appointment at Argonne, their interests were aligned, their counsel is the same and she has alleged that the University and Argonne "colluded and conspired" to terminate her employment. (Compl. ¶ 31.)

We agree with defendants that plaintiff cannot bring an action against Argonne because the exception to the general rule does not apply here. In her complaint, plaintiff alleges only that the faculty of the Institute had dual appointment with Argonne. She does not allege that these individuals had control over her employment or made any decisions regarding her termination. Instead, she identifies the Institute's new Chief of Staff and the Institute's HR representative Ms. Mercer as those individuals who were involved in her termination. Moreover, with respect to her retaliation claim, the faculty at Argonne had no involvement at all with her prior sexual harassment complaint in a separate University department. And finally, as defendants demonstrate, the language in her EEOC charge would not provide any notice to Argonne that it was involved in her

allegations at all. Plaintiff has alleged that these two entities "colluded" in her termination but this type of bare-bones allegation is insufficient to support her claim. As a result, even at this early stage, and viewing the pleadings in the light most favorable to plaintiff, we find that the complaint against Argonne cannot stand because Argonne was not named in her EEOC charge. *See, e.g.*, *Alam v. Miller Brewing Co.*, 709 F.3d 662, 667 (7th Cir. 2013) (dismissing a complaint because "the fact that one entity had notice of the charges against it is insufficient to satisfy the *Eggleston* exception as to a related entity that did not have notice of a charge against it or an opportunity to conciliate that charge" and plaintiff had not pled anything related to the *Eggleston* exception in his complaint).

**3. Plaintiff was Not Employed by Argonne**

Next, defendants argue that Argonne cannot be a defendant in the retaliation claim because plaintiff has not alleged that Argonne was plaintiff's employer. In response, plaintiff argues that Argonne was her employer because the faculty of the Institute, who were plaintiff's superiors, have "dual appointment" to Argonne National Laboratory, which is operated by Argonne. She claims that the Institute and Argonne jointly discussed the payment of the invoices, and that the complaint includes an allegation that the Institute and Argonne "colluded and conspired" regarding her termination. Therefore, plaintiff asserts that she has adequately stated a plausible claim that Argonne was acting as her employer. We disagree.

Title VII imposes liability upon the complaining employee's "employer." *Tamayo,* 526 F.3d at 1087. To determine whether an entity is an employer of a particular individual, a court should "look to the economic realities of the relationship and the

degree of control the employer exercises." *Heinmeier v. Chemetco, Inc.*, 246 F.3d 1078, 1082–83 (7th Cir. 2001). Here, we find that plaintiff has not alleged that Argonne was her employer for purposes of the retaliation claim. As we explained above, plaintiff has not alleged that any individuals at Argonne had any control over her termination. Her complaint notes that the Chief of Staff, other management and the HR rep, all employees of the University, were involved in her termination. She also complains about retaliation in response to her sexual harassment complaint, which took place in another department at the University, with no connection at all to Argonne. While plaintiff has alleged that faculty at the Institute have dual appointment at Argonne, there is no allegation that any of these faculty members had any involvement in the purported retaliation or in her termination. In other words, plaintiff has not alleged that Argonne was her employer because there are no allegations that Argonne had control over any relevant aspects of her employment. *See e.g., Tamayo,* 526 F.3d at 1074 (entity was deemed an employer where plaintiff alleged that an entity controlled her compensation and other personnel decisions, which was a "highly significant aspect of her employment" and her salary was the subject of her claims against defendant). As a result, defendants' motion to dismiss the claims against Argonne is granted.

**C. Plaintiff's Wrongful Termination Claim**

Because we have concluded that each of plaintiff's federal law claims should be dismissed, the only remaining claim is her state law claim for wrongful termination. The only basis for jurisdiction over that claim is supplemental jurisdiction. 28 U.S.C. § 1367(a). The "general rule is that when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state law claims." *Carpenter v.*

*City of Chicago,* 290 F. Supp. 2d 932, 934 (N.D. Ill. 2003) (quoting *Kennedy v. Schoenberg, Fisher, & Newman, Ltd.*, 140 F.3d 716, 727 (7th Cir.1998)). Because plaintiffs' federal claims against defendants fail, we decline to exercise supplemental jurisdiction over her remaining state claim at this time. 28 U.S.C. § 1367(c)(3). *See, e.g., Carpenter*, 290 F. Supp. 2d at 934. As a result, we will not address the arguments defendants raised in support of the dismissal of those claims. Instead, we dismiss those claims as well, and grant plaintiff leave to file an amended complaint if she chooses to do so. *Harris v. Vill. of Ford Heights,* No. 17 CV 4184, 2018 WL 2718029, at *5 (N.D. Ill. June 6, 2018) ("[I]t is well-established that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

## IV. Conclusion

For the foregoing reasons, defendants' motion to dismiss is granted without prejudice. Plaintiff is granted leave to amend her complaint by August 8, 2018. If she fails to file an amended complaint by that date, the dismissal of her claim will convert automatically to a dismissal with prejudice and judgment will enter on her complaint. *Goldman v. Vill. of Oakwood Hills*, No. 18 CV 50004, 2018 WL 3039748, at *5 (N.D. Ill. June 19, 2018). It is so ordered.

**Dated: July 18, 2018**

**Honorable Michael T. Mason**
**United States Magistrate Judge**