**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SANDRA MARIJAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 17-CV-9361** |
| **v.** | ) | |
| | ) | **Magistrate Judge Michael Mason** |
| **THE UNIVERSITY OF CHICAGO, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Plaintiff Sandra Marijan brings this action pursuant to Title VII of the Civil Rights Act of 1964, and Illinois common law, against defendant the University of Chicago ("the University"). Plaintiff initially filed this suit on December 29, 2017, alleging procedural and substantive due process violations, retaliation and wrongful termination after she was terminated from her employment at the University. She named the University, as well as UChicago Argonne, LLC as defendants in that complaint. On July 17, 2018, the Court granted defendants' motion to dismiss for failure to state a claim and dismissed plaintiff's complaint without prejudice. The Court granted plaintiff leave to file an amended complaint.

On August 10, 2018, plaintiff filed her Amended Complaint. In that complaint, she eliminated defendant Argonne and did not re-plead her claims under Section 1983. As a result, her Amended Complaint includes only one defendant – the University – and she alleges only one federal claim for retaliation under Title VII and one state claim for wrongful termination. The University has again moved to dismiss the Amended

1

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 41). The University also filed a separate motion for sanctions, arguing that plaintiff's Amended Complaint is frivolous. (Dkt. 44). For the reasons set forth below, defendant's motion to dismiss (Dkt. 41) is granted. Plaintiff's federal claim for retaliation under Title VII is dismissed with prejudice and her state law claim is dismissed for lack of jurisdiction. Defendant's motion for sanctions (Dkt. 44) is denied.

## I.    Background[1]

Plaintiff Sandra Marijan began working for the University in various departments and positions approximately 14 years ago. (Compl. ¶ 4.) The University is a non-profit corporation, with over 14,000 students and over 15,000 employees. (*Id.* ¶ 8.) In December of 2015, plaintiff was working in the Office of the Vice President for Research and National Laboratories at the University, when an IT support specialist made sexually suggestive comments to her, which made her very uncomfortable. (*Id.* ¶ 8.) Earlier that year, the same individual had shown plaintiff an inappropriate photograph. (*Id.*) Plaintiff reported the incident to her supervisor, the Vice President for Research and National Laboratories, and the University's HR department. (*Id.* ¶ 9.) The HR department investigated plaintiff's claims of sexual harassment, and in January 2016, found that her allegations were substantiated. (*Id.* ¶ 10.)

In early 2016, plaintiff's department at the University began a structural reorganization and plaintiff's position was eliminated. (*Id.* ¶ 11.) Plaintiff immediately

---

[1] The following facts are taken from plaintiff's Amended Complaint (Dkt. 37) and are accepted as true for purposes of the motion to dismiss. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

began searching for a new job, and in June of 2016, plaintiff accepted a position with the University's Institute of Molecular Engineering (the "Institute") as an executive assistant. (*Id.* ¶ 13.) In that role, her duties included managing daily operations for professors and graduate students, as well as handling financial matters, grants, special events, conferences, workshops and other support services. (*Id.* ¶ 15.) Plaintiff was initially assigned as the support person for two professors, and in early 2017, two additional professors were added to her responsibilities. (*Id.* ¶ 19, 21.)

In 2016, Professor Giulia Galli (a member of the Institute faculty) directed plaintiff to assist with the planning of a MICCOM Scientific Board Meeting to be held at Argonne National Laboratory. (*Id.* ¶ 16.) Professor Galli instructed plaintiff to organize and secure hotel accommodations for meeting attendees, organize a reception, organize dinners, reimburse board members for travel expenses, book transportation and other related tasks. (*Id.* ¶ 17.) There were no issues with plaintiff's handling of the 2016 conference. (*Id.* ¶ 18.)

Professor Galli planned another MICCOM workshop to be held at the University for about 60 people in July of 2017. (*Id.* ¶ 22.) Plaintiff's duties for that workshop involved event planning and financial matters, including invoicing all expenses to Argonne for the workshop. *(Id.* ¶ 23.) At a May 18, 2017 meeting, plaintiff was directed to charge all expenses to a particular account at the Institute and not to charge any expenses to Professor Galli's federal grants. (*Id.* ¶ 24.) Plaintiff was also required to provide Argonne with an estimate of the expenses for the MICCOM workshop, and was expected to get management approval for any invoices before sending them out or seeking reimbursement. (*Id.* ¶ 25-26.) Issues arose with the reimbursements due to

3

the fluctuating number of participants at the workshop, and additional expenses were also incurred.  (*Id.*¶ 27.)  Plaintiff checked with her superiors regarding how she should handle the situation and her superiors approved the invoicing.  (*Id.*)  Professor Galli did not want the additional expenses to come out of her grant funds or the Institute research account so she directed plaintiff to invoice Argonne for the additional charges.  (*Id.* ¶ 29.)  After plaintiff's supervisors conferred with Argonne, plaintiff submitted the invoice to Argonne for payment.  (*Id.* ¶ 30).

On July 27, 2017, a "senior manager" and "the Director of Finance & Operations" stopped payment of the invoice for the additional expenses and questioned plaintiff's handling of the invoicing.  (*Id.* ¶ 31.)  On August 3, 2017, an HR representative from the Institute, Valerie Mercer, told plaintiff that management would "escalate the situation" if she did not quit and that she should take the rest of the day off.  (*Id.* ¶ 32.)  Plaintiff returned the following day to find that she did not have building access.  (*Id.* ¶ 33.)  After speaking to a Facilities Director, plaintiff's access was reinstated.  (*Id.*)  After returning to work that day, plaintiff was subject to rude comments and hostility from Mercer.  (*Id.* ¶ 34.)  Plaintiff then left for a previously planned two-week vacation.  (*Id.* ¶ 35.)

When she returned on August 22, 2017, plaintiff received an email requesting an interview with the HR department and the Employee and Labor Relations Department regarding an investigation into the invoicing for the July 2017 workshop.  (*Id.* ¶ 36.) Plaintiff claims that after the MICCOM workshop, she was "subjected to increased scrutiny and intimidation," that her workload increased causing her undue stress and pressure, and that the work environment became "hostile with snide remarks and verbal abuse directed at the plaintiff."  (*Id.* ¶ 37.)  While she was on vacation, the professors

that plaintiff was assigned to were questioned.  (*Id.* ¶ 38.)  Plaintiff learned from one professor that she was being singled out for the billing error and that the University wanted to punish her for the mistake.  (*Id.* ¶ 39.)  In September of 2017, a new Chief of Staff started at the Institute and had group and individual meetings with the employees, all of whom, including plaintiff, were thanked for their hard work and told that they were valued employees.  (*Id.* ¶ 40.)

Plaintiff handled another MICCOM workshop in September of 2017 without incident.  (*Id.* ¶ 41.)  On September 29, 2017, the new Chief of Staff, along with Ms. Mercer, the HR representative, met with plaintiff.  (*Id.* ¶ 42.)  At this meeting, Ms. Mercer gave plaintiff her termination letter, requested immediate return of all Institute and University property, and escorted her out of the building. *(Id.)*  Plaintiff alleges that she was not subject to any discipline prior to her discharge.  *(Id.* ¶ 46.)

Plaintiff's termination letter stated that she was terminated because she had falsified documents – specifically, an invoice sent to Argonne on July 26, 2017 for reimbursement as part of a conference.  (*Id.* ¶ 43.)  Plaintiff was the only person disciplined or terminated regarding the invoice.  (*Id.* ¶ 44.)  There is no indication in plaintiff's employee file that her "performance was wanting" and she had not been subject to discipline during her 14 years of employment with the University of Chicago until her termination.  (*Id.* ¶ 46-47.)

In her Amended Complaint, plaintiff states that she was terminated based upon her invoicing for the MICCOM workshop, which she had been directed to do.  (*Id.* ¶ 51, 57.)  She also alleges that she was terminated because she had previously complained about sexual harassment.  (*Id.*)  Plaintiff alleges that she had "a target on her back" ever

since she filed a complaint with her superiors in January of 2016. (*Id.* ¶ 52.) She claims she lost her job shortly after her sexual harassment complaint was sustained, and that she suffered emotional distress. (*Id.* ¶ 53.) She claims that "defendants' wrongful acts…. were intentional, willful and wanton and in total disregard and reckless indifference to plaintiff's rights." (*Id.* ¶ 63.)

Plaintiff also complains that she was assigned more work than other employees and was assigned to those professors with the busiest schedules. (*Id.* ¶ 55.) She also claims that she did not receive training or guidelines on how to handle the invoicing issues so she ran all invoicing through multiple supervisors for approval before they were sent out, asking questions and requesting verification at every stage of invoicing. (*Id.* ¶ 56-57). Despite obtaining all necessary approvals, plaintiff claims she was subject to termination as a direct and proximate result of discrimination and a hostile work environment. (*Id.* ¶ 61) She claims her termination was excessive discipline in the light of the fact that invoicing errors were made by other employees but they were not subject to any discipline or even correction. (*Id.* ¶ 65). She also claims that her termination was discriminatory because she was singled out for termination while other employees who approved of the invoicing were not subject to discipline. (*Id.* ¶ 66).

In her Amended Complaint, plaintiff alleges that the University engaged in retaliation in violation of Title VII of the Civil Rights Act, and wrongful termination under Illinois law. She claims that as a result of the University's actions, she has suffered severe financial damages, including lost wages, benefits, future earnings, damage to reputation, medical expenses, mental anguish, humiliation, anxiety other compensatory damages and attorney's fees. (*Id.* ¶ 68.)

Defendants now seek to dismiss plaintiff's claims under Rule 12(b)(6), arguing that: 1) she has not adequately pled an adverse employment action; 2) her retaliation claims fail because of the lengthy time gap between the sexual harassment complaint and her termination; 3) she cannot plead facts that are outside the scope of her EEOC charge; and 4) her wrongful termination claim is preempted by the Illinois Human Rights Act and fails because it lacks the requisite public policy allegations. We address these issues below.

## II.     Standard on a Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, it must contain enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Moreover, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). When ruling on a 12(b)(6) motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged and drawing all possible inferences in the plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). A complaint must allege facts, either directly or inferentially, which set forth the essential elements of the cause of action. *Balagiannis v. Mavrakis,* No. 08 C 943, 2008 WL 3009925, at *2 (N.D. Ill. Aug. 5, 2008)

### III.   Analysis

### A.      Retaliation Claim

#### 1.  Plaintiff has Not Plead a Sufficient Adverse Employment Action

In their motion, the University argues that plaintiff has not pled sufficient allegations to establish an adverse employment action for her retaliation claim.  Title VII makes it unlawful for an employer to retaliate against employees for complaining about prohibited discrimination.  *Boss v. Castro,* 816 F.3d 910, 916 (7th Cir. 2016).  Under the direct method of proving a retaliation claim, a plaintiff must establish: 1) she engaged in protected activity; 2) she suffered a materially adverse employment action; and 3) there was a causal link between the protected activity and the adverse action.  *Boss*, 816 F.3d at 918.[1]  Failure to show that a plaintiff suffered an adverse employment action will lead to the dismissal of plaintiff's claims.  *Id.*  In other words, a plaintiff must prove that a "retaliatory animus" motivated the defendant's adverse action against them.  *Brown v. Advocate South Suburban Hosp.,* 700 F.3d 1001, 1106 (7th Cir. 2012).

An "adverse employment action" in a retaliation case means a *materially* adverse action, which is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Boss,* 816 at 919.  "Not everything that makes an employee unhappy is an actionable adverse action;" rather, "the action must be materially adverse and it is important to separate the significant from trivial harms."

---

[1] Under the indirect method for stating a retaliation claim, the plaintiff must establish: 1) he engaged in protected activity; 2) he suffered a materially adverse employment action; 3) he was meeting his employers legitimate expectations; and 4) he was treated less favorably than similarly situated employees who did not engage in protected activity.  Boss, 816 F.3d at 918.  Because plaintiff's complaint does not include any allegations regarding similarly situated employees, we have only addressed the direct method of providing retaliation.  *See Brown v. Advocate South Suburban Hosp.*, 700 F.3d 1001, 1106 (7th Cir. 2012).

*Brown,* 700 F.3d at 1106. In particular, a materially adverse action does not include "petty slights, minor annoyances or bad manners"; rather, an employee must suffer something "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Boss*, 816 F.3d at 919. Similarly, "unfair reprimands, negative performance reviews, unaccompanied by tangible job consequences" or "snubbing by superiors and co-workers" are insufficient. *Id.*; *Brown,* 700 F.3d at 1101.

Here, plaintiff first alleged that she became unemployed after the department "began a structural reorganization and eliminat[ed] [her] position." (Am. Compl. at ¶ 11). She claims that by June of that year, she had accepted a new position within the University. (*Id.* at ¶ 11.) Therefore, we could construe her situation as a mere lateral transfer, which is how she pled these events in her initial complaint. In dismissing that complaint, we noted that a lateral transfer is not an "adverse employment action" for purposes of a retaliation claim unless the plaintiff has established a significant change in her salary, promotion opportunities or benefits. *See e.g., Martinez v. Northwestern Univ.*, 173 F. Supp. 3d 777, 788 (7th Cir. 2016) ("By and large, a reassignment that does not affect pay or promotion opportunities lacks the potential to dissuade a reasonable employee from making or supporting a charge of discrimination."); *Princeton v. Lowes Home Ctrs.*, No. 09 CV 1942, 2009 WL 3824610, at *4 (N.D. Ill. Nov. 6, 2009) ("A transfer without any decrease in hours or pay or significant diminution in material duties" is not an adverse employment action and "is legally insufficient to support a retaliation claim"). As a result, plaintiff's retaliation claim is not sufficient on this basis.

Even if we were to construe these facts as a termination of employment in 2016 rather than a lateral transfer, and if we find that this is a sufficient "adverse employment

action" for her retaliation claim, plaintiff has not alleged that there was a sufficient nexus between the protected activity and her complaint. As we explained above, a plaintiff must allege a "causal link" between the protected activity and the adverse employment action. *Boss*, 816 F.3d at 918. Here, there is no allegation that plaintiff was terminated because of her sexual harassment complaint. Instead, plaintiff has only alleged that her position was eliminated because of a reorganization and restructuring within the department. (Am. Compl. at ¶ 11.) Any allegation that there is a connection between her sexual harassment complaint and the restructuring is noticeably absent from her complaint. Indeed, the fact that the University re-hired her shortly after her position was eliminated undermines any allegations of retaliation. As a result, we agree with defendant and find that these allegations do not support a retaliation claim.

Plaintiff also argues that she was subject to several adverse employment actions after the University re-hired her for the position at the Institute. She claims that she was assigned as support for four professors, was subject to threats from HR about escalating the invoice situation if she did not quit, she was the subject of rude comments, hostility, increased scrutiny and intimidation, she was denied building access, and she was singled out for discipline. She claims that the Amended Complaint establishes the link between her discrimination for being female and the adverse employment actions taken against her. We disagree.

As we explained above, while plaintiff has alleged certain changes in her employment, these are not "adverse employment actions" that will support a claim of retaliation. Indeed, courts have held that rude comments, increased scrutiny and adding additional professors to her work load do not suffice. *Brown*, 700 F.3d at 1106

10

(no adverse employment action where nurses were denied favorable shifts and work assignments, and claimed to be getting "the cold shoulder" from their boss); *Boss*, 616 F.3d at 919 (conclusory assertions such as "barrage of criticism" and "workplace stresses" will not support a retaliation claim). In this case, the test is whether the action would dissuade a reasonable person from complaining about the sexual harassment. Because plaintiff's asserted "adverse" employment actions would not cause her any actual injury, they would not have dissuaded a reasonable person from complaining, and therefore, they are not a materially adverse employment actions for purposes of a retaliation claim. *Brown*, 700 F.3d at 1106-07 (collecting cases demonstrating that incivility from co-workers, getting stared at or yelled at, receiving a performance employment plan, and unfulfilled threats are not sufficient for retaliation claims under Title VII). Accordingly, these facts do not sufficiently allege an adverse employment action here.

Plaintiff also alleges that her ultimate termination in 2017 is an adverse employment action in support of her retaliation claim. However, as we explained in our opinion dismissing plaintiff's first complaint, the 19-month time gap between the complaint about the sexual harassment and her subsequent termination in 2017 is too remote to establish the requisite nexus between these two events. "[R]etaliation claims under Title VII require traditional but-for causation, not a lesser 'motivating factor' standard of causation." *Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 508 (7th Cir. 2014) (internal citations omitted). Where there is a time gap between the two events, courts have held that, even at the pleading stage, "a retaliation claim can indeed be so bare-bones that a lengthy time period between the protected activity and the alleged

retaliation will make any causal connection between the two implausible." *Brownlee v. Catholic Charities of the Archdiocese of Chicago*, No. 16 CV 00665, 2017 WL 770997, at *7 (N.D. Ill. Feb. 28, 2017) (holding there was no causal link when there were thirty months between harassment complaint and termination). In other words, for a retaliation claim that infers causation based on timing, as here, the adverse employment action must follow "close on the heels of protected expression" - typically, only a few days later. *Ghiles v. City of Chicago Heights*, No. 12 CV 07634, 2016 WL 561897, at *2 (N.D. Ill. Feb. 12, 2016) (holding that an unexplained six month delay between the protected activity and the retaliation was "too remote" to link the two events and establish causation).

Here, plaintiff's alleged protected activity – the sexual harassment complaint - occurred 19 months before her ultimate termination in 2017. As we previously held, there is no reasonable inference of causation here because of the lengthy time gap between the protected activity and the adverse employment action. Under the case law set out above, the 19-month gap is far too long to allow us to infer causation. And her complaint does not allege a pattern of ongoing retaliation that would be sufficient to support her claim. *See, e.g, Brownlee,* 2017 WL 770997, at *7 (granting motion to dismiss retaliation claim because the complaint gave no indication that ongoing retaliation occurred during the lengthy time gap between plaintiff's harassment complaint and defendant's retaliatory conduct).

Plaintiff argues that the Amended Complaint alleges on-going retaliation that would establish the requisite nexus, despite the 19-month time gap. Plaintiff argues that she has alleged on-going retaliation because of the restructuring in her former

department, and the way she was treated in her new position at the Institute.  However, as we have already explained above, the allegations regarding her treatment at the Institute are insufficient to establish adverse employment actions for purposes of a retaliation claim.  Without more, there is simply no sufficient nexus between the sexual harassment and the subsequent termination 19-months later.  *See, e.g., Ghiles,* 2016 WL 567897, at *2 ("for a retaliation claim inferring causation based on timing,... the adverse employment action must follow 'close on the heels of protected expression' - typically only a few days later") (citing *Kidwell v. Eisenhauer,* 679 F.3d 957, 964 (7th Cir. 2012)); *compare Carlson v. CSX Transp.*, 758 F.3d 819, 828-29 (7th Cir. 2014) (retaliation claim was sufficiently pled where plaintiff alleged that attempts to advance at the company were thwarted and she "described an ongoing campaign" of retaliation). As a result, these allegations do not save plaintiff's retaliation claim.

Similarly, as we previously noted, there is no allegation that those responsible for her termination at the University were even aware of the sexual harassment complaint she made 19 months earlier in a separate department.  She alleges in her Amended Complaint that the same HR department handles all HR issues for the entire University, and she then argues that Mercer must have known about the previous complaint when she fired plaintiff.  However, the University has 15,000 employees and plaintiff worked in several different departments over the 14 years she was employed.  In her brief, plaintiff implies that her sexual harassment complaint was relayed to Ms. Mercer, but that is nowhere in her Amended Complaint.  The Amended Complaint only alleges that Mercer was involved in her handling of the invoicing at the Institute and her termination. Plaintiff cannot rewrite her complaint allegations in the briefing on this motion, and the

13

complaint alleges no connection between her sexual harassment complaint and her ultimate termination. Without some facts to support her conclusion that her termination was a response to her sexual harassment complaint, her retaliation claim fails. *See Lugo v. Int'l Brotherhood of Elec. Workers,* 175 F. Supp. 3d 1026, 1038-39 (N.D. Ill. 2016) (retaliation claim dismissed where there was no evidence that defendants even knew of plaintiff's prior complaint).

In addition, plaintiff currently notes that the Seventh Circuit has articulated the following categories of adverse employment actions: 1) where an employee's compensation, fringe benefits or other financial terms of employment are diminished, including termination; 2) where a nominal lateral transfer significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that her career is stunted; and 3) an employee's working conditions are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful or otherwise significantly negative alteration in her work place environment. Plaintiff states in her brief, without any explanation, that her allegations "fall within these categories of adverse employment actions." But as we have explained above, the Court finds that her allegations do not meet any of these categories of adverse employment actions. As such, her complaint for retaliation should be dismissed.

Plaintiff also argues that she was terminated for her handling of the invoicing – but the handling of invoicing is not a "protected activity" for purposes of a retaliation claim. As we have explained, under well-settled caselaw in this Circuit, plaintiff has not alleged facts sufficient to establish an "adverse employment action," Without these allegations, her retaliation claim fails again.

### 2. Allegations Outside The Scope of Plaintiff's EEOC Charge

The University also argues that the elimination of plaintiff's position in early 2016 cannot support her retaliation claim because it occurred more than 300 days before her EEOC charge was filed.  Similarly, the University argues that several of plaintiff's allegations are outside the scope of her EEOC charge and are not related to the allegations such that the EEOC would not have been expected to investigate them.  Because we have already determined that plaintiff's complaint allegations do not support a claim of retaliation, we need not address these arguments.

### B.  Plaintiff's Wrongful Termination Claim

Because we will grant the University's motion to dismiss plaintiff's sole federal law claim, the only remaining claim is her state law claim for wrongful termination.  The only basis for jurisdiction over that claim is supplemental jurisdiction.  28 U.S.C. § 1367(a).  Again, the "general rule is that when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state law claims." *Carpenter v. City of Chicago,* 290 F. Supp. 2d 932, 934 (N.D. Ill. 2003) (quoting *Kennedy v. Schoenberg, Fisher, & Newman, Ltd.*, 140 F.3d 716, 727 (7th Cir.1998)).  Because plaintiffs' federal claims against defendant fails, we will not exercise supplemental jurisdiction over her remaining state claim.  28 U.S.C. § 1367(c)(3).  *See, e.g., Carpenter*, 290 F. Supp. 2d at 934.  As a result, we will not address the arguments the University raises in support of the dismissal of that claim.  Instead, we dismiss that claim as well.  *Harris v. Vill. of Ford Heights,* No. 17 CV 4184, 2018 WL 2718029, at *5 (N.D. Ill. June 6, 2018) ("[I]t is well-established that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been

15

dismissed prior to trial.").  Because we are now dismissing plaintiff's federal claim with prejudice, plaintiff can bring her state law claims in Illinois state court.

## III.  Defendant's Motion for Sanctions

Along with its motion to dismiss, the University has filed an additional motion seeking Rule 11 sanctions from plaintiff.  (Dkt. 44.)  The University argues that plaintiff has filed frivolous claims, ignoring controlling case law, relying on unsound legal arguments and inventing facts in her briefing that are not contained in the Amended Complaint.  While we agree with the University that plaintiff's amended claims still lack merit, we do not find that it is appropriate to impose monetary sanctions on plaintiff.  We do agree with the University that plaintiff has had a second bite at the apple and has failed to rectify the deficiencies we noted when we dismissed plaintiff's first complaint.  As a result, our dismissal of plaintiff's Amended Complaint is now with prejudice.

## IV.  Conclusion

For the foregoing reasons, the University's motion to dismiss is granted with prejudice.  We deny plaintiff's request for leave to file a second Amended Complaint because we find that the first Amended Complaint includes the same defects we addressed when we granted defendant's motion to dismiss her first complaint.  As a result, we do not find that leave to file yet another amended complaint is warranted.  In addition, defendant's motion for sanctions is denied.

It is so ordered.

**Dated: December 17, 2018**

**Michael T. Mason**
**United States Magistrate Judge**

16